IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| NATISHA JACKSON O/B/O J.J., ) <br> ) <br>     Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ANDREW SAUL, ) <br> Commissioner of Social Security, ) <br> ) <br>     Defendant. ) | CASE NO. 3:19-CV-936-KFP |

**MEMORANDUM OPINION AND ORDER**

On April 3, 2017, Plaintiff Natisha Jackson, on behalf of her minor son J.J., protectively filed an application for child's Supplemental Security Income, alleging disability beginning on that date. T. 135-40, 143. On January 11, 2019, after appropriate proceedings, the Administrative Law Judge issued an unfavorable decision finding J.J. was not disabled. T. 14-33. Plaintiff seeks judicial review of that decision (*see* Doc. 1), and judicial review now proceeds under 42 U.S.C. §§ 405(g) and 1383(c)(3). Upon careful consideration of the parties' briefs (Docs. 10, 13) and the transcript (Doc. 14), the undersigned AFFIRMS the Commissioner's decision for the reasons set forth below.

**I.      STANDARD OF REVIEW**

The Court's review of the Commissioner's decision is a limited one. The Court's sole function is to determine whether the ALJ's opinion is supported by substantial evidence and whether the proper legal standards were applied. *See Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.

1983). "The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'" *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting 42 U.S.C. §405(g)). Thus, this Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales,* 402 U.S. 389 (1971)); *Foote*, 67 F.3d at 1560 (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

If the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the Court would have reached a contrary result as finder of fact and even if the evidence preponderates against the Commissioner's findings. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)). The Court must view the evidence as a whole, taking into account evidence that is favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560 (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]"; instead, it "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth*, 703 F.2d at 1239).

The Court will also reverse the Commissioner's decision on plenary review if the decision applies incorrect law or if the decision fails to provide the Court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991) (quoting *MacGregor*, 786 F.2d at 1053).

## II. STATUTORY AND REGULATORY FRAMEWORK

A claimant (or his parent or guardian) bears the burden of providing evidence that he is disabled within the meaning of the Social Security Act. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a), (c); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). For a child under the age of 18 to be considered disabled and eligible for SSI under the Act, the child must have a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C). The phrase "marked and severe functional limitations" refers to "a level of severity that meets, medically equals, or functionally equals" the Listing of Impairments found at 20 C.F.R. § 404, subpart P, appendix 1. 20 C.F.R. § 416.902(h), (o).

In evaluating a claim for child's SSI benefits, the Commissioner follows a three-step evaluation process. At step one, the Commissioner determines whether the claimant

is performing substantial gainful activity. *See* 20 C.F.R. § 416.972. If the individual is not, the analysis proceeds to the second step. *See* 20 C.F.R. § 416.924(b).

At the second step, the Commissioner determines whether the claimant has a medically determinable impairment or a combination of impairments that is severe. *See* 20 C.F.R. § 416.924(a). For a child under the age of 18, a medically determinable impairment or combination of impairments is not severe if it is a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations. *See* 20 C.F.R. § 416.924(c). If the claimant does not have a severe medically determinable severe impairment or combination of impairments, he is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step. *See* 20 C.F.R. § 416.924(a).

At step three, the Commissioner determines whether the claimant has an impairment or combination of impairments that meets, medically equals, or functionally equals the severity of a Listing. In making this determination, the Commissioner must consider the combined effect of all medically determinable impairments, including those that are not severe. *See* 20 C.F.R. §§ 416.923, 416.924a(b)(4), 416.926a(a), (c). If the claimant has an impairment or combination of impairments that meets, medically equals, or functionally equals the severity of a Listing, and it has lasted or is expected to last for a continuous period of at least 12 months, he is presumed to be disabled. If not, the claimant is not disabled. *See* 20 C.F.R. § 416.924(d).

A claimant's impairment meets or medically equals a Listing only where it "satisfies all of the criteria of the Listing, including any relevant criteria in the introduction

4

[section]." *Id.* To satisfy all the criteria of a Listing, a claimant must (i) have a diagnosis included in the Listings and (ii) provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement. *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (citations omitted); *see also* 20 C.F.R. §§ 416.925, 416.926. "For a claimant to show that his impairment matches a Listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

If a child's impairment or combination of impairments does not meet or medically equal a Listing, the ALJ will evaluate whether a child's impairment functionally equals a Listing by considering the following six broad functional areas, called domains: (i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and (vi) Health and physical well-being. *See* 20 C.F.R. § 416.926a(b)(1). If a child has an extreme limitation in one domain or marked limitations in two domains, the child's impairment is functionally equivalent to a listed impairment. *See* 20 C.F.R. § 416.926a(d).

### III. BACKGROUND

#### A. Factual Background

J.J. was five years old on his alleged onset date and seven years old at the time of the ALJ's decision. T. 20. He attended kindergarten, first grade, and second grade during the relevant time period. T. 20. Plaintiff alleges J.J. was disabled due to ADHD. T. 188.

### B. Administrative Proceedings

On April 3, 2017, Plaintiff protectively filed an application for SSI on behalf of J.J., alleging disability beginning on that date. T. 135-40, 143. The agency denied Plaintiff's application at the initial level (T. 74-78), and she requested a hearing before an ALJ (T. 82-84). Following a hearing (T. 38-61), the ALJ issued an unfavorable decision on January 11, 2019, finding J.J. was not disabled. T. 14-33. On October 30, 2019, the Appeals Council denied Plaintiff's request for review. T. 1-3. Thus, Plaintiff sought judicial review. Doc. 1.

### C. The ALJ's Decision

In her January 11, 2019 decision, the ALJ first found that J.J. had not engaged in substantial gainful activity since his alleged onset date of April 3, 2017. T. 20. The ALJ then found that J.J. had the following severe impairments: ADHD, Intermittent Explosive Disorder/Oppositional Defiant Disorder ("ODD"), and Generalized Anxiety Disorder. *Id.*

Next, the ALJ found that J.J. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listings. *Id.* In making this finding, the ALJ noted that J.J. had not demonstrated marked or extreme limitation in his ability to understand, remember, or apply information; concentrate, persist, or maintain pace; or adapt or manage himself. *Id.* Specifically, the ALJ found no impairment in J.J.'s ability to understand, remember, or apply information; no impairment in his ability to adapt or manage himself; and less than marked limitation in his ability to concentrate, persist, and maintain pace. *Id.* The ALJ determined that J.J. had a marked limitation in his ability to interact with others but concluded that alone was insufficient for a finding of disability. *Id.*

Next, after discussion of the evidence in the record, the ALJ found that J.J. also did not have an impairment or combination of impairments that functionally equaled the severity of the Listings. T. 20-33. Accordingly, the ALJ found that J.J. had not been under a disability from his alleged onset date of April 3, 2017 through the date of the ALJ's decision on January 11, 2019. T. 33.

## IV.   ISSUES BEFORE THE COURT

Plaintiff presents two issues for the Court to consider in its review of the Commissioner's decision:

1. Did the ALJ err by finding that J.J. did not have an impairment or combination of impairments that met or medically equaled Listing 112.08?

2. Did the ALJ err by finding that J.J. did not have an impairment or combination of impairments that functionally equaled the severity of the Listings?

## V.   DISCUSSION

### A. The ALJ did not err in finding that J.J. did not have an impairment or combination of impairments that met or medically equaled Listing 112.08.

To meet or medically equal Listing 112.08, which deals with personality and impulse-control disorders in children, a claimant must demonstrate:

A. Medical documentation of a pervasive pattern of one or more of the following:

1. Distrust and suspiciousness of others;
2. Detachment from social relationships;
3. Disregard for and violation of the rights of others;
4. Instability of interpersonal relationships;
5. Excessive emotionality and attention seeking;
6. Feelings of inadequacy;
7. Excessive need to be taken care of;
8. Preoccupation with perfectionism and orderliness; or

    9. Recurrent, impulsive, aggressive behavioral outbursts.

    AND

    B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 112.00F):

        1. Understand, remember, or apply information (see 112.00E1).
        2. Interact with others (see 112.00E2).
        3. Concentrate, persist, or maintain pace (see 112.00E3).
        4. Adapt or manage oneself (see 112.00E4).

An extreme limitation is a limitation that "interferes very seriously with [the] ability to independently initiate, sustain, or complete activities" and is given only to "the worst limitations." 20 C.F.R. § 416.926a(e)(3)(i). A marked limitation is a limitation that "interferes seriously with [the] ability to independently initiate, sustain, or complete activities" and is "more than moderate." 20 C.F.R. § 416.926a(e)(2)(i).

    The parties agree that Plaintiff has satisfied the "A." provision of the Listing. Doc. 10 at 7; Doc. 13 at 10, n.2. However, the ALJ determined that Plaintiff did not demonstrate an extreme limitation of one, or marked limitation of two, of the areas of mental functioning in the "B." provision of the Listing. Accordingly, the ALJ determined that J.J. did not have an impairment or combination of impairments that met or medically equaled the Listing. Plaintiff argues that finding was erroneous. Specifically, Plaintiff argues that J.J. has an extreme limitation in interacting with others or, at the very least, a marked limitation in interacting with others; concentrating, persisting, or maintaining pace; and/or adapting or managing himself. Doc. 10 at 7, 9.

    In support of her claims, Plaintiff relies on a disability Teacher Questionnaire J.J.'s kindergarten teacher completed on May 16, 2017. T. 205-213. In that questionnaire, J.J.'s

8

teacher opined, in part, that J.J. had "obvious" to "very serious" problems in several areas, which Plaintiff argues demonstrates extreme or marked limitations in the above areas of mental functioning.[1] However, while the ALJ found the teacher's opinion to be "persuasive," she determined that it was "not entirely consistent with the overall record" because the record showed J.J.'s behavioral problems were merely sporadic; his behavior improved significantly with behavior interventions and medication; and his periods of increased behavior problems generally corresponded to periods where J.J. did not take his medication appropriately. T. 26.

Plaintiff takes issue with the ALJ's treatment of the Teacher Questionnaire. Specifically, Plaintiff argues that, while J.J.'s "extensive treatment, including multiple medications and behavioral therapy, resulted in some improvement . . . there is no evidence that J.J. improved to a degree that conflicts with the opinions from [his] teacher." Doc. 10

---

[1] For instance, J.J.'s teacher opined in part that he had a serious problem waiting to take turns and changing from one activity to another without becoming disruptive; a very serious problem working without distracting himself or others; a serious problem asking permission; and a very serious problem expressing anger appropriately, following rules, and respecting/obeying adults in authority. T. 207-208. However, J.J.'s teacher also opined that J.J.'s instructional levels in reading, math, and writing were "average to high." T. 205. She observed "NO problems" in J.J.'s ability to acquire and use information, including comprehending oral and written instructions, comprehending math problems, understanding and participating in class discussions, expressing ideas, learning new material, and applying problem-solving skills. T. 206. She found that he had no problems paying attention when spoken to, sustaining attention during play/sports activities, and focusing long enough to finish assigned activities. T. 207. She noted, "[J.J.] is capable of completing [tasks] with ease and completely independently. However, he doesn't like to do tasks that are work in nature." *Id.* She found that he had no problems using appropriate language to communicate, introducing and maintaining relevant and appropriate topics of conversation, and taking turns in conversation. T. 208. She noted that J.J.'s anger problems "worsened when he doesn't get his ADHD medication" but his behavior improved when he took his medication. T. 208, 212. She stated, "[J.J.] was on an ADHD medication for about a week. During that time, he didn't have any angry tantrums or outbursts. He completed tasks with ease and seemed to be generally happier. Since that time, Mom decided to have his dose changed [and J.J.] is not responding well to this change." T. 212. As will be discussed below, the ALJ considered all of this evidence in her January 11, 2019 decision.

at 8. Accordingly, Plaintiff argues the ALJ erred by "fail[ing] to cite to findings in the record supporting her conclusion that the opinions from J.J.'s teacher are not consistent with the record." *Id*. at 9. In response, the Commissioner argues that the ALJ *did* cite to evidence in the record supporting her conclusion and that her conclusion is supported by substantial evidence. Doc. 13 at 10-12. Upon independent consideration of the ALJ's decision and the record, the Court agrees with the Commissioner and finds that (i) the ALJ properly considered J.J.'s teacher's May 2017 opinion and (ii) substantial evidence supports the ALJ's decision to deviate from that opinion.

> i. The ALJ properly considered the May 16, 2017 Teacher Questionnaire in her decision.

As an initial matter, the ALJ discussed J.J.'s teacher's May 2017 opinion numerous times throughout her decision. First, the ALJ found that the opinion conflicted with Plaintiff's report of her child's abilities and behavior. T. 23. For instance, the ALJ found Plaintiff's report that J.J. had problems with reading, spelling, writing, math, explaining himself, doing physical activities, and managing himself independently to be inconsistent with the teacher's opinion. *Id.* The ALJ further noted that:

> The teacher did report obvious to very serious problems in interacting and relating with others, caring for himself, and attending and completing tasks, but she also noted that the child was quite capable of completing tasks "with ease and completely independently." However, he did not like to do "work" like tasks and would become angry and throw tantrums. She said he was angry almost all the time. She also noted, however, that the child's anger was worsened when he did not get his ADHD medication. She reported the child had been on an ADHD medication for only about a week, during which time he had no angry tantrums or outbursts. He completed tasks with ease and seemed generally happier. However, since that time, "Mom decided to have his dose changed" and the child did not respond well to the change.

T. 23-24. Finally, the ALJ stated that although she found the teacher's opinion "persuasive," it was "not entirely consistent with the overall record." T. 26. The ALJ stated:

> Although I agree the child has some difficulty in interacting with others and attending and completing tasks, the record does not show significant limitations in the child's ability to care for himself. Additionally, while the teacher documents serious problems in attending and completing tasks and interacting with others, with appropriate treatment these problems are better controlled and only sporadic.[]
>
> The record shows the child has some behavior problems that most significantly impact his ability to interact and relate with others and his ability to attend and complete tasks. However, the child is still able to do well in school and makes good grades. Additionally, the behavior problems are mostly sporadic and have improved significantly with behavior interventions and medication. Periods of increased behavior problems generally correspond to periods where the child did not take medicine appropriately.

*Id.* Thus, it is clear to the Court that the ALJ properly considered the teacher's entire opinion, including evidence that both supports and challenges the ALJ's findings. *See Kilpatrick ex rel. RLK v. Colvin*, No. 2:11cv652, 2013 WL 3994674, at *4 (M.D. Ala. Aug. 2, 2013) (finding no error in ALJ's consideration of teacher questionnaire where ALJ cited to the questionnaire twice and referred to the teacher's responses in reaching his findings); *Courtney D. on behalf of M.B. v. Comm'r of Soc. Sec. Admin.*, No. 1:18cv3347, 2019 WL 5406552, at *2 (N.D. Ga. Sept. 10, 2019) ("The ALJ cited the teacher questionnaires several times throughout her opinion and specifically explained why—based on when Claimant started taking medication and his subsequent improvement—she accorded the questionnaires only moderate weight.[] As such, the ALJ sufficiently explained the weight she gave to the teacher questionnaires and her reasoning.").

> ii. Substantial evidence supports the ALJ's finding that J.J. did not have an impairment or combination of impairments that met or medically equaled Listing 112.08.

Additionally, there is substantial evidence in the record, specifically addressed in the ALJ's decision, to support the ALJ's finding that J.J. had only marked limitation in his ability to interact with others; less than marked limitation in his ability to concentrate, persist, and maintain pace; and no limitation in his abilities to understand, remember, or apply information and adapt or manage himself. *See* T. 21-26 (the ALJ's discussion of the evidence in the record).

For instance, in June 2017, J.J. was promoted to the first grade after performing satisfactorily in all subjects. T. 23, 145. His teachers consistently observed the following behaviors: listening attentively and following directions; demonstrating fine motor skills; completing projects in a timely manner; working independently with little assistance; accepting responsibility for his own materials; and communicating with adults and peers. T. 23, 146. He achieved expectations for all physical skills. T. 23, 148. He demonstrated "exemplary" behavior in the areas of willing participation; consideration of self, others, and equipment; ability to listen and follow directions; and staying on task. T. 23, 149. J.J.'s teacher reported that he was "very smart"; that she saw progress in his attitude and behavior; that he had made a friend who was a good role model; that she could count on J.J. to help her around the classroom; and that he seemed to enjoy the sense of responsibility. T. 23, 362.

In August 2017, Plaintiff reported to Dr. Patel, J.J.'s treating physician, that J.J. was doing "okay" on his current medication but the effect wore off by 1:00 p.m. T. 24, 475.

Thus, Dr. Patel prescribed J.J. Adzenys so that it would work the whole day. *Id.* Also, in August 2017, Dr. Robert Estock, a psychiatrist and state agency medical consultant, reviewed J.J.'s record and opined that J.J. had marked limitation in interacting and relating with others; less than marked limitation in attending and completing tasks; and no limitations in the remaining functional domains. T. 27, 67-68.

Notably, gaps in pharmacy records indicate that J.J.'s medication was not picked up every month, including in September and October 2017. T. 24, 370. Medication was dispensed in November 2017. *Id.* That month, Plaintiff told Dr. Patel that J.J. was "doing much better," with only "some" bad days. T. 477. He had reportedly been doing very well until three weeks prior, when he regressed a little bit and acted out at school and home. *Id.* However, he had continued making good grades in school. *Id.* Dr. Patel noted that J.J. was cooperative and that he sustained attention and concentration throughout their session. *Id.* Dr. Patel assigned J.J. a Global Assessment of Functioning rating of 70, indicating only mild symptoms. T. 478.

Medication was again not picked up in December 2017, at which time J.J. had a behavioral issue at school. T. 24, 314-316. The medication was dispensed again in January 2018 (T. 24, 370), at which time J.J. had a follow-up appointment with Dr. Patel. T. 24, 479-483. During their meeting, Dr. Patel noted that J.J.'s behavior was cooperative and pleasant; he was conversational and made good eye contact; his speech was fluent, articulate, and regular in rate, rhythm, and volume; his memory was grossly intact; he had good insight and judgment; and he was oriented with organized, logical, linear, and goal-oriented thought processes. T. 24, 482.

In February 2018, J.J. attempted to play with his iPad during an appointment with Dr. Patel, and he made faces when Dr. Patel made him turn it off. T. 24, 484. Dr. Patel told Plaintiff that she needed to be strict with J.J. and should not have allowed him to bring his iPad to the appointment. *Id.* Dr. Patel also noted that, although J.J. reportedly experienced no side effects from his medications, Plaintiff was undecided and kept changing her mind about J.J.'s medications and the doses she wanted for him. *Id.* During his evaluation, J.J. was cooperative; his speech was clear, coherent, and goal-oriented; his affect was constricted but appropriate; and he was oriented and sustained concentration and attention throughout the session. *Id.* Dr. Patel made no changes to J.J.'s medications. *Id.*

In February and March 2018, J.J. was generally able to listen, follow directions, and maintain a positive attitude. T. 25, 266-290. He demonstrated "good manners," was a "very hard worker," and was a "good friend to others." *Id.* Although J.J. had behavior problems intermittently, he generally had good days, and he managed to calm down, control his anger, and avoid tantrums on numerous occasions. *Id.* J.J.'s first grade teacher reported that his behavioral problems were "sporadic" and inconsistent and that interventions had proven effective. T. 25, 309.

In April 2018, Dr. Patel noted that J.J.'s anxiety, attention, hyperactivity, and behavior were all well controlled with medication and that J.J. had no side effects from his medication. T. 25, 485-489. J.J. had a euthymic mood; he had organized, logical, linear, and goal-oriented thoughts; he was oriented; his memory was grossly intact; he had good insight and judgment; he was cooperative, pleasant and conversational; he made good eye contact; and his dress and hygiene were appropriate. *Id.*

14

J.J.'s 2017-2018 first grade report card, issued in or around June 2018, demonstrated good to excellent grades in all subjects. T. 25, 294. His teacher indicated that he had an "excellent 4th quarter" and had exhibited "great improvements in behavior." *Id.* J.J. was promoted to the second grade. *Id.*

In July 2018, Brent Smith, P.A., observed that J.J.'s interaction with his mother was normal and that he interacted well with other adults. T. 25, 491. Plaintiff reported to Smith that J.J. was involved in school and community activities and completed self-care tasks like brushing his teeth, exercising, and sleeping appropriately. *Id.*

In August 2018, Plaintiff reported to medical personnel that medication had improved J.J.'s behavioral issues, including his attentiveness and anger management. T. 25-26, 500. She reported that she had not given J.J. his medication as prescribed because it made him groggy. *Id.* She reported that J.J. had received some school-based services that helped with anger management. *Id.* The counselor encouraged Plaintiff to try a different medication to assist with anger management. T. 503. Two weeks later, Plaintiff reported that J.J. had experienced only one angry outburst at school, and his teacher had intervened. T. 26, 512.

The above evidence, discussed by the ALJ in her decision, indicates that J.J. had more good days than bad days with regard to his behavior; that he was often cooperative and pleasant at school and medical appointments; that he had learned or was learning to control his anger and avoid tantrums; and that he had friends. Thus, there is substantial evidence in the record to support the ALJ's findings that J.J.'s behavioral problems were sporadic, rather than consistent; that his behavior improved significantly with behavior

15

interventions and medication; and that his periods of increased behavioral problems generally corresponded to periods where J.J. did not take his medication as prescribed. Accordingly, substantial evidence supports the ALJ's finding that J.J. had a marked, rather than extreme, limitation in interacting with others.

Furthermore, the above evidence indicates that J.J. is intelligent; that he consistently makes good grades; that his mental status is generally normal; and that he is perfectly capable of independently completing tasks, particularly when he takes his ADHD medication as prescribed. Thus, there is substantial evidence in the record to support the ALJ's findings that J.J. had no limitation in his ability to understand, remember, or apply information; no limitation in his ability to adapt or manage himself; and less than marked limitation in his ability to concentrate, persist, or maintain pace. Accordingly, substantial evidence supports the ALJ's determination that J.J. did not have an impairment or combination of impairments that met or medically equaled Listing 112.08. Therefore, that determination was not erroneous.

Plaintiff cites to and argues that there is evidence in the record that supports a contrary finding. However, this Court's review "is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (citations omitted). In this case, as addressed above, the Court finds that substantial evidence supports the findings of the Commissioner and that the correct legal standards were applied. Thus, although there may also be some evidence in the record supporting a contrary finding, the Court is not entitled to decide the facts anew, reweigh the evidence,

or substitute its judgment for that of the Commissioner. *See Winschel*, 631 F.3d at 1178. This is true even if the evidence preponderates against the ALJ's findings. *See Gibbs v. Comm'r, Soc. Sec. Admin.*, 686 F. App'x 799, 800 (11th Cir. 2017).

> **B. The ALJ similarly did not err in finding that J.J. did not have an impairment or combination of impairments that functionally equaled the severity of a Listing.**

As discussed above, a child may also be found disabled for purposes of SSI if he has a severe impairment or combination of severe impairments that are functionally equivalent to a Listing. 20 C.F.R. § 416.924(d). To demonstrate functional equivalence of a Listing, the claimant must demonstrate one area of extreme limitation or two areas of marked limitation in the following domains of functioning:

   i. Acquiring and using information;
   ii. Attending and completing tasks;
   iii. Interacting and relating with others;
   iv. Moving about and manipulating objects;
   v. Caring for yourself; and
   vi. Health and physical well-being.

20 C.F.R. § 416.926a(b)(1). Plaintiff argues that J.J. should have been found to have an extreme, rather than marked, limitation in interacting and relating with others; a marked limitation in concentration, persistence, or pace, which is the equivalent of attending and completing tasks; and a marked limitation in caring for himself. Doc. 10 at 10-11. However, for the same reasons set forth above, the Court finds that the ALJ sufficiently explained her reasoning and that substantial evidence supports the ALJ's findings.

Although Plaintiff vaguely argues that "[t]he ALJ certainly did not consider all the relevant evidence relating to" these areas of functioning, *see* Doc. 10 at 10, Plaintiff fails

to cite to any specific evidence not addressed in the ALJ's decision that she believes should have been considered. *See N.L.R.B. v. McClain of Georgia, Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived.") (citing *Continental Tech. Serv., Inc. v. Rockwell Int'l Corp.*, 927 F.2d 1198, 1199 (11th Cir. 1991)). The argument, if not waived, is nevertheless unpersuasive. The Eleventh Circuit has made clear that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in [her] decision" so long as the decision enables the Court to conclude that the ALJ properly considered the claimant's condition as a whole. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)). Here, the ALJ's comprehensive discussion of the evidence in the record and consideration of evidence both strengthening and weakening her position enables the Court to make such a conclusion.[2]

Finally, Plaintiff briefly argues that the ALJ should have obtained a psychiatric or psychological evaluation to assess J.J.'s mental functioning under *McCall v. Bowen*, 846 F.2d 1317 (11th Cir. 1988). In *McCall*, the Eleventh Circuit stated that, under 42 U.S.C. §

---

[2] Plaintiff states in her brief that, "[i]n concluding that J.J. does not have an impairment or combination of impairments that functionally equals a . . . Listing the ALJ relied primarily on findings from a non-examining state agency medical consultant." Doc. 10 at 12. Plaintiff argues that reliance on the consultant was inappropriate and that "[t]he ALJ failed to explain why she concluded that the nearly year-and-a-half of treatment records submitted after August 2017 contradicted the opinions from the non-examining consultant." *Id.* However, upon review, the Court finds neither that the ALJ relied "primarily" on the medical consultant's opinion nor that she concluded treatment records rendered after August 2017 contradicted that opinion. To the contrary, the ALJ discusses—at length—treatment and other records rendered after August 2017 and simply remarks that the medical consultant's opinion "is persuasive as it is consistent with the overall evidence." T. 27.

421(h), "in any case where there is evidence which indicates the existence of a mental impairment the [Commissioner] may determine that the claimant is not under a disability only if the [Commissioner] has made every reasonable effort to obtain the opinion of a qualified psychiatrist or psychologist." *Id.* at 1320. However, as the Commissioner indicates, the plain language of § 421(h) appears to apply only to initial determinations, not to decisions made by an ALJ. *See* 42 U.S.C. § 421(h) (stating that the rule applies to "[a]n initial determination"); *see also Sneed v. Barnhart*, 214 F. App'x 883, 886 (11th Cir. 2006) (recognizing that "[t]he Third Circuit has held that the normal requirement to order a psychiatric consult pursuant to § 421(h) does not apply to . . . cases heard by an ALJ.") (citations omitted).

Regardless of its applicability, the ALJ complied with § 421(h) in this case because Dr. Estock, a qualified psychiatrist and state agency medical consultant, reviewed the record and provided an opinion regarding Plaintiff's mental impairments and functioning. *See* T. 67-71; *see also Westphal v. Berryhill*, No. 4:16cv59, 2017 WL 2172021, at *7 (N.D. Ala. May 17, 2017). The opinion of Dr. Estock, as a non-examining state agency medical consultant, is entitled to consideration as a relevant expert opinion. *Westphal*, 2017 WL 2172021, at *7 (citing 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i)). Indeed, this Court and numerous other courts have previously concluded that an ALJ's reliance on a state agency medical consultant's review is appropriate to satisfy any requirement imposed by

§ 421(h) even where the ALJ did not order a consultative psychological examination.[3] Accordingly, the ALJ's failure to order a consultative psychological examination in this case was not erroneous.

## VI.    CONCLUSION

For the reasons set forth above, the Court finds that substantial evidence supports the findings of the Commissioner and that the correct legal standards were applied. Accordingly, it is ORDERED that:

1.      The decision of the Commissioner is AFFIRMED.

2.      A final judgment will be entered separately.

DONE this 31st day of March, 2021.

/s/ Kelly Fitzgerald Pate
KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE

---

[3] *See, e.g., Westphal*, 2017 WL 2172021, at *7; *Fernandez v. Saul*, No. 3:19cv458, 2020 WL 3259174, at *5, n.5 (M.D. Ala. June 16, 2020) (holding record was sufficient without consultative examination by a qualified psychiatrist or psychologist where Dr. Estock, as a non-examining state agency medical consultant, reviewed the record and provided an opinion regarding plaintiff's mental impairments and functioning); *Parker v. Colvin*, No. 3:15cv269, 2016 WL 1092237, at *4 (M.D. Ala. Mar. 21, 2016) (same); *Thomas v. Colvin*, No. 11-00569, 2015 WL 4458861, at *15 (S.D. Ala. July 21, 2015) (same).